CLERK'S OFFICE U.S. [illegible] COURT
AT ROANOKE, VA
FILED

DEC 07 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PINNACLE BANK, | ) |
| | ) Civil Action No. 7:17CV00395 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| BLUESTONE ENERGY SALES | ) Senior United States District Judge |
| CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

Pinnacle Bank ("Pinnacle") filed this interpleader action seeking to resolve competing claims to funds in the amount of $1,403,607.47, which were held in a business checking account with Pinnacle. On July 20, 2018, the court entered proposed orders granting a joint motion for distribution of interpleader funds and dismissing the action with prejudice. Pinnacle has filed a motion to amend judgment, arguing that the orders were entered prematurely since the bank previously reserved the right to seek attorneys' fees and costs. The case is presently before the court on that motion and Pinnacle's subsequent motion for attorneys' fees and costs. For the following reasons, the court will grant the motion to amend judgment and award Pinnacle fees and costs in the amount of $33,606.71.

### Background

Bluestone Energy Sales Corporation ("Bluestone"), A&G Coal Corporation ("A&G Coal"), Dynamic Energy, Inc. ("Dynamic Energy"), Justice Management Services, LLC ("Justice Management"), Kentucky Fuel Corporation ("Kentucky Fuel"), Nine Mile Mining, Inc. ("Nine Mile Mining"), and Tams Management, Inc. ("Tams Management") (collectively, the "Bluestone Defendants") are affiliated companies that opened a series of business checking accounts with Bank of North Carolina ("BNC") between May 30, 2017 and June 9, 2017. On June 16, 2017, BNC

merged with and into Pinnacle, and BNC's separate corporate existence came to an end. As a result, the Bluestone Defendant's BNC accounts became Pinnacle accounts.

The Bluestone Defendants arranged for their accounts to be linked together through a "sweep" or "zero balance" arrangement, which enabled funds to be easily transferred from one account to another. Bluestone's account served as the main account. At the end of each day, funds were transferred from the main account to the subsidiary accounts to cover any debits, and any deposits that were made into the subsidiary accounts were transferred to the main account.

Between June 21 and June 29, 2017, the Internal Revenue Service ("IRS") issued levies to Pinnacle and BNC, respectively, against certain assets of A&G Coal, Dynamic Energy, Justice Management, Kentucky Fuel, Nine Mile Mining, and Tams Management. In response, Pinnacle froze the accounts opened for each of those entities. Because the accounts were linked to Bluestone's account through the "sweep" or "zero balance" arrangement, Pinnacle also froze the funds in that account. Those funds constituted the disputed funds at issue in this case (the "Disputed Funds").

On July 24, 2017, the Bluestone Defendants filed a lawsuit against BNC and Pinnacle in the Circuit Court for the City of Roanoke, alleging that Pinnacle and/or BNC had wrongfully frozen the Disputed Funds in Bluestone's account in response to the IRS levies. Pinnacle removed the action to this court on August 3, 2017. See Bluestone Energy Sales Corp. v. Bank of North Carolina, No. No. 7:17-cv-00365 (W.D. Va. Aug. 3, 2017).

Faced with competing claims to the Disputed Funds from the Bluestone Defendants and the IRS, Pinnacle consulted with the Bluestone Defendants and the United States about the possibility of commencing an interpleader action to resolve the matter. After conferring with the other parties, Pinnacle commenced this action against the Bluestone Defendants and the United States on August

22, 2017. The first action removed from state court was then consolidated with the interpleader action.

The Bluestone Defendants subsequently filed a cross-claim against the United States, and Carter Bank & Trust ("Carter Bank") moved to intervene. Although an IRS officer had initially recommended that Pinnacle file an interpleader action, the United States reversed course and moved to dismiss the action for lack of subject matter jurisdiction. Pinnacle opposed that motion and filed its own motion for summary judgment. The United States was the only party to oppose Pinnacle's motion. However, less than a month later, the United States withdrew the motion to dismiss, and the parties negotiated a consent order granting Pinnacle's motion for summary judgment and dismissing the related action removed from state court with prejudice. The consent order, which was entered on April 26, 2018, provided, in relevant part, as follows:

> It is hereby:
>
> ORDERED that the Clerk of the Court shall accept the sum of $1,403,607.47 from Pinnacle (the "Disputed Funds") and deposit said funds in a non-interest-bearing account;
>
> ORDERED that the Disputed Funds shall remain on deposit until further order of the Court; [and]
>
> ORDERED that Pinnacle is hereby DISMISSED from this action, but <u>such dismissal shall not affect or preclude Pinnacle's rights to move for recovery of its attorneys' fees from the non-governmental defendants, or the Court's consideration of that motion</u>[.]

Consent Order Granting Summ. J., Dkt No. 50 (emphasis added).

The remaining parties proceeded to engage in settlement negotiations over the next few months. On May 29, 2018, the court entered a consent order permitting a portion of the Disputed Funds in the amount of $357,657.82 to be paid to the United States for application toward the unpaid federal tax liabilities of Dynamic Energy. On June 11, 2018, at the request of the remaining

3

parties, the court entered an order staying all further proceedings while they finalized agreed-upon settlement terms.

On July 20, 2018, the court received two filings from the remaining parties. The first was a joint motion for distribution of interpleader funds and proposed order, in which the Bluestone Defendants, the United States, and Carter Bank requested that additional funds in the amount of $792,342.18 be paid to the United States for application toward unpaid federal tax liabilities of Dynamic Energy, A&G Coal, Justice Management, Kentucky Fuel, Nine Mile Mining, and Tams Management. The joint motion further requested that the remaining balance of the Disputed Funds, totaling $253,607.47, be distributed to Bluestone. The second filing was a stipulation and proposed order of dismissal, in which the Bluestone Defendants, the United States, and Carter Bank stipulated that the action be dismissed with prejudice as to all claims, with each party to bear its own attorneys' fees and costs. The court signed and entered both of the proposed orders that same day.

On June 23, 2018, Pinnacle moved to amend the July 20, 2018 orders to the extent that they provided for disbursement of a portion of the Disputed Funds to Bluestone. Pinnacle argued that any disbursement to Bluestone was premature in light of the fact that Pinnacle had reserved the right to seek attorneys' fees from the non-governmental defendants.

Pinnacle subsequently filed a motion for attorneys' fees and costs in the amount of $109,635.51. Thereafter, the parties agreed to the entry of an order requiring Bluestone to preserve funds in an amount not less than $109,635.51 in the trust account of its counsel, pending a ruling on Pinnacle's motion. The order further provided that Bluestone shall remit any award of attorneys' fees and costs directly to Pinnacle from the aforementioned funds within seven days of the court's ruling.

The court held a hearing on Pinnacle's motions via conference call on September 28, 2018. The motions have been fully briefed and are ripe for disposition.

## Discussion

### I. Motion to Amend Judgment

For the reasons stated during the hearing, the court will grant Pinnacle's motion to amend judgment. It is clear from the record that Pinnacle reserved the right to seek recovery of attorneys' fees from the Disputed Funds, to the extent that such funds were not allocated to the United States for payment toward outstanding tax liabilities.[1] Consequently, the court agrees that the proposed orders submitted by the remaining parties on July 20, 2018 were entered prematurely, and that it would be manifestly unjust to preclude Pinnacle from seeking an award of attorneys' fees and costs. Consequently, Pinnacle is entitled to relief under Federal Rule of Civil Procedure 59(e), and the orders entered on July 20, 2018 will be amended in the manner set forth below. See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (explaining that a Rule 59(e) motion may be granted to correct a clear error of law or prevent manifest injustice).

### II. Motion for Attorneys' Fees and Costs

Pinnacle seeks to recover $108,969.80 in attorneys' fees and $665.71 in costs from the portion of the Disputed Funds disbursed to Bluestone. Bluestone has opposed the motion, arguing that the requested amount of attorneys' fees is unreasonable.

"Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward." Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Sprague, 251 F. App'x 155, 156 (4th Cir. 2007) (collecting cases from other circuits). The theory behind such an award is that "the innocent stakeholder should not

---

[1] It is undisputed that an award of attorneys' fees and costs is not "payable out of a part of the fund impressed with a federal tax lien." Cavalier Serv. Corp. v. Wise, 645 F. Supp. 31, 37 (E.D. Va. 1986); see also First Interstate Bank of Or., N.A. v. U.S. By & Through I.R.S., 891 F. Supp. 543, 548 (D. Or. 1995) (noting that a federal tax lien had priority over the stakeholder's ability to diminish the interpleader fund by an award of attorneys' fees and costs).

have to bear the costs of the interpleader action. Rather, the claimants, the parties that benefit from the action, should bear the costs." Weber v. Rivanna Solid Waste Auth., No. 3:98-cv-0109, 2001 U.S. Dist. LEXIS 19644, at *6 (W.D. Va. Nov. 27, 2001). Although a stakeholder is not automatically entitled to fees and costs "as a matter of course," the "test for determining attorneys' fees in an interpleader action is less rigorous than the more elaborate factors used to consider fee awards in civil rights suits and other contexts." Sun Life Assurance Co. v. Grose, 466 F. Supp. 2d 714, 717 (W.D. Va. 2006) (citation and internal quotation marks omitted). Ultimately, "the broad rule is reasonableness." Id. "In the normal interpleader action, the attorneys' fees awarded will be relatively modest, in as much as all that is necessary to bring an interpleader action is the preparation of a petition, the deposit of the contested funds into court, service on all claimants, and the preparation of an order discharging the stakeholder." Id. (citation and internal quotation marks omitted).

Having considered the parties' arguments and applicable caselaw, the court finds that Pinnacle should be awarded reasonable attorneys' fees and costs from the portion of the Disputed Funds distributed to Bluestone. The court is convinced that Pinnacle brought this action in good faith to resolve the defendants' rights to the Disputed Funds. Moreover, it cannot be said that the claims at issue in this case are of the type that arise in the ordinary course of Pinnacle's business. See id. (noting that fees and costs "may be denied where the conflicting claim is one that arises in the ordinary course of the stakeholder's business").

The court also finds, however, that the amount of attorneys' fees requested by Pinnacle must be significantly reduced. Pinnacle has been represented by attorneys from the Richmond, Virginia office of Hunton Andrews Kurth LLP (formerly known as Hunton & Williams LLP). Pinnacle seeks compensation at the rate of $650.00 per hour for worked performed by two partners, Edward Furr and Eric Feiler. Pinnacle also seeks compensation at the hourly rates of $570.00 and $300.00,

respectively, for work performed by a senior associate, Johnathon Schronce, and a paralegal, Michelle Hayden-Winston.

When determining a reasonable rate, the court considers the prevailing market rate in the relevant community, as well as the background and experience of the individual attorneys involved. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 285–86 (1989); Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). The prevailing market rate can be established through evidence of the attorneys' billing practices, comparison to fee awards in similar cases, and affidavits reciting fees of counsel from the relevant community with similar qualifications. Spell, 824 F.2d at 1402. After reviewing the affidavits submitted by the parties and fee awards in other cases in this district,[2] the court finds that the following hourly rates are reasonable for the work performed in this case: $400.00 for the work performed by Mr. Furr, $325.00 for the work performed by Mr. Feiler, $250.00 for the work performed by Mr. Schronce, and $125.00 for the work performed by Ms. Hayden-Winston.[3]

The court also finds it appropriate to reduce the number of hours for which Pinnacle requests reimbursement. According to Mr. Schronce's declaration and the attached exhibits, Pinnacle seeks attorneys' fees for nearly 200 hours billed by the attorneys and paralegal. Upon review of the billing records, the court agrees with Bluestone that the records reflect instances of overstaffing or duplication of effort, and that they include time that does not clearly relate to the tasks of preparing the interpleader complaint, obtaining service of process on the claimants, depositing the Disputed

---

[2] Bluestone submitted declarations from two attorneys, Scott Sexton and David Walker, both of whom have over thirty years of experience practicing in the Western District of Virginia. Pinnacle provided a declaration from one of its own attorneys, Mr. Schronce, attesting to the fees and costs incurred by the bank.

[3] The court recognizes that the partner rates are lower than those permitted in Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC, No. 1:09-cv-00022, 2014 U.S. Dist. LEXIS 55871 (W.D. Va. April 21, 2014), on which Pinnacle heavily relies. However, that case is distinguishable from the instant action in that it involved a "somewhat complicated contractual dispute," which ultimately proceeded to a bench trial on multiple counts. 2014 U.S. Dist. LEXIS 55871, at *15; see also Griffin v. Areva, Inc., No. 6:16-cv-00029, 2016 U.S. Dist. LEXIS 181861, at *5 (W.D. Va. Dec. 15, 2016), report and recommendation adopted, 2017 U.S. Dist. LEXIS 4892 (W.D. Va. Jan. 12, 2017) (distinguishing Three Rivers and reducing hourly rates for a partner and associate with Troutman Sanders LLP to $375.00 and $250.00, respectively, in an ERISA action dismissed under Rule 12(b)(6)).

Funds into the court's registry, or securing Pinnacle's discharge from liability and dismissal from the action. See, e.g., Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc., No. 8:15-cv-012953, 2017 U.S. Dist. LEXIS 9227, at *9 (D. Md. Jan. 23, 2017) (holding that the stakeholder could not recover the fees and costs associated with litigating certain motions, since such matters went "beyond the purpose of interpleader, which is to request that [the court] preserve the funds while deciding to which entity the funds will ultimately be awarded"); Hearing v. Minn. Life Ins. Co., 33 F. Supp. 3d 1035, 1044 (N.D. Iowa 2014) (declining to allow the stakeholder to recover fees for "attorney-client communications or unspecified legal research"); ReliaStar Life Ins. Co. v. LeMone, No. 7:05-cv-00545, 2006 U.S. Dist. LEXIS 22938, at *10 (W.D. Va. Apr. 25, 2016) (holding that the nature of the work required in the interpleader action did not justify the "hefty amount of attorneys' fees" sought by the stakeholder, even though the defendants filed motions that "somewhat complicate[d]" the "ordinarily simple process"). Moreover, a considerable portion of the time billed by Pinnacle's legal team was attributable solely to challenges made by the United States after the instant action was filed. As indicated above, the United States initially moved to dismiss the action for lack of subject matter jurisdiction, and it was the only party to oppose Pinnacle's motion for summary judgment. Although Bluestone's initial lawsuit gave rise to multiple claims against the Disputed Funds and prompted Pinnacle to file this interpleader action, the court does not find it appropriate to shift all of the attorneys' fees attributed to the government's filings to Bluestone.

For all of these reasons, the court will reduce the number of hours for which Pinnacle seeks reimbursement by 35 percent. The reduced number of hours, when combined with the applicable hourly rates, produces a lodestar of $32,941.00. While this amount may be higher than the "modest" award typically made in the "normal interpleader action," the court finds that no further adjustment is warranted under the facts and circumstances of this particular case. Sun Life

Assurance Co., 466 F. Supp. 2d at 717. Accordingly, the court will award Pinnacle attorneys' fees in the amount of $32,941.00, together with its costs of $665.71, for a total of $33,606.71.

## Conclusion

For the reasons stated, Pinnacle's motion to amend judgment will be granted, and its motion for attorneys' fees and costs will be granted in part and denied in part. The order granting the joint motion for distribution of interpleader funds (Dkt. No. 56) will be amended to reflect that $33,606.71 of the Disputed Funds disbursed to Bluestone shall be remitted to Pinnacle to cover the attorneys' fees and costs awarded by the court. Additionally, the stipulation and order of dismissal (Dkt. No. 57) will be amended to reflect that each party will bear its own attorneys' fees and costs, with the exception of those awarded to Pinnacle by separate order.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 7th day of December, 2018.

_____
Senior United States District Judge